# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **TAMMY L. O.**, | Case No. 3:17-cv-774-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **COMMISSIONER, SOCIAL SECURITY ADMINISTRATION**, | |
| Defendant. | |

Lisa R. J. Porter, JP Law PC, 5200 SW Meadows Road, Suite 150, Lake Oswego, OR 97035. Of Attorney for Plaintiff.

Billy J. Williams, United States Attorney, and Renata Gowie, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204; Diana Swisher Andsager, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

      Plaintiff Tammy L. O. seeks judicial review of the final decision of the Commissioner of

the Social Security Administration ("Commissioner") denying her application for disability

insurance benefits ("DIB") under Title II of the Social Security Act. For the reasons discussed,

the decision of the Commissioner is reversed and remanded for further proceedings.

**STANDARD OF REVIEW**

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

**BACKGROUND**

**A.  Plaintiff's Application**

Plaintiff, who is 46 years old, filed for Title II disability insurance benefits ("DIB") on July 1, 2013, alleging a disability onset date of August 31, 2010. AR 18. Plaintiff's claim was denied initially and again upon reconsideration, and Plaintiff requested a hearing. A hearing was

held before Administrative Law Judge ("ALJ") Linda Thomasson on September 3, 2015. The

ALJ concluded that Plaintiff is not disabled. AR 32. The Appeals Council denied review on

March 24, 2017, AR 18, and Plaintiff filed her claim in this Court on May 17, 2017. ECF 1.

**B. The Sequential Analysis**

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

§§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is

potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential

process asks the following series of questions:

1.    Is the claimant performing "substantial gainful activity?" 20 C.F.R.
      §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving
      significant mental or physical duties done or intended to be done for pay
      or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing
      such work, she is not disabled within the meaning of the Act. 20 C.F.R.
      §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing
      substantial gainful activity, the analysis proceeds to step two.

2.    Is the claimant's impairment "severe" under the Commissioner's
      regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An
      impairment or combination of impairments is "severe" if it significantly
      limits the claimant's physical or mental ability to do basic work activities.
      20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death,
      this impairment must have lasted or be expected to last for a continuous
      period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the
      claimant does not have a severe impairment, the analysis ends. 20 C.F.R.
      §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe
      impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant

numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C. The ALJ's Decision

At Step One, the ALJ concluded that Plaintiff has not engaged in substantial gainful activity since August 31, 2010. At Step Two, the ALJ concluded that Plaintiff has two severe impairments: affective disorder and anxiety disorder. At Step Three, the ALJ concluded that Plaintiff's impairments, either alone or in combination, did not equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ then concluded:

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: limited to simple, routine tasks and simple work-related decisions. The claimant can have frequent interaction with supervisors, coworkers, and the public.

AR 24.

At Step Four, the ALJ concluded that Plaintiff is capable of performing her past relevant work as a mail clerk. AR 30. The ALJ also made an alternative finding for Step Five that there are other jobs existing in the national economy that Plaintiff is also able to perform. AR 31. As such, the ALJ concluded that Plaintiff has not been under a disability, as defined by the Social Security Act, from August 31, 2010 through the date of the ALJ's decision. AR 32.

## DISCUSSION

Plaintiff argues first that she meets listing 12.04. Second, Plaintiff argues that the ALJ erred in disregarding Plaintiff's subjective complaints about the severity of her symptoms. Third, Plaintiff argues that the ALJ did not properly consider several Global Assessment of Functioning ("GAF") scores in the record. Fourth, Plaintiff argues that the ALJ erred in giving little weight to two medical source opinions and to the opinion of Plaintiff's husband. Finally, Plaintiff argues that the ALJ failed to incorporate all medical evidence into Plaintiff's RFC.

## A.  Plaintiff's Subjective Symptom Testimony

Plaintiff testified that she has "daily anxiety that generally tends to be out of control," and that medication does not completely relieve her anxiety. AR 47. Plaintiff testified that she also suffers from depression and has "had suicidal ideations on more than one time." AR 47. She testified that she has "quite severe" fatigue. AR 48. As for physical limitations, Plaintiff testified that she is able to walk for about half a block before becoming fatigued, that she can stand for about 15 minutes before needing a break, that she can sit for around two hours, and that she can lift less than 10 pounds. AR 52. With respect to mental limitations, Plaintiff testified that she "[a]t times" has difficulty with memory, and twice had her water shut off because she forgot to pay her bill. AR 52. Plaintiff testified that her fatigue and anxiety make it "very difficult to concentrate for long periods of time," and at times made it difficult to make "clear decisions." AR 53, 59. Plaintiff also testified that she does not interact with others due to pain, depression, and anxiety. AR 53. Plaintiff testified that she suffers from panic attacks about five times per week that make it difficult to breathe at times. AR 57. Plaintiff testified that she also has sleep disturbance that is not helped by medication. AR 58. Plaintiff testified that she has "very few" good days, on which her anxiety and fatigue are slightly improved. Plaintiff also testified that regularly visiting her psychologist and psychiatrist helps her condition. AR 59. She also testified that while she was working, she was able to complete a part-time workday, but that she was "absent a lot" due to pain, depression, and anxiety. AR 59-60.

There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting

*Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; [s]he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Here, the ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely credible." AR 25. The ALJ then stated that "objective findings in this case fail to provide strong support for the claimant's allegations of disabling symptoms and limitations." The ALJ proceeded to summarize portions of Plaintiff's medical records, identifying instances in which Plaintiff was reported to have normal objective findings or in which Plaintiff reported that medication or counseling had improved her symptoms. The ALJ also noted that Plaintiff had no history of suicide attempts and had never been hospitalized for anxiety or depression. After reviewing medical and lay opinions, the ALJ stated that she gave Plaintiff "the benefit of the

doubt with regard to her mental impairments." AR 30. The ALJ concluded that treatment notes,

Plaintiff's own allegations, and Plaintiff's activities of daily living "support finding limitations

with respect to concentration, persistence, and pace." AR 30. The ALJ further concluded,

however, that "the evidence fails to support the claimant's assertions of total disability." AR 30.

The ALJ explained that "[t]reatment notes in the record do not sustain the claimant's allegations

of disabling limitations," and "the objective medical evidence weakens the credibility of the

claimant's allegations." AR 30.

### 1. Lack of Specificity

An ALJ's reasons for disregarding a claimant's testimony about the severity of his or her

symptoms must be "sufficiently specific to permit the reviewing court to conclude that the ALJ

did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th

Cir. 1995) (citation omitted). An ALJ is required to specify *what testimony* he or she finds non-

credible. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015) ("Here, the ALJ found

generally that the claimant's testimony was not credible, but failed to identify which testimony

she found not credible and why. We conclude, therefore, that the ALJ committed legal error.");

*Treichler v. Comm'r*, 775 F.3d 1090, 1102-03 (9th Cir. 2014) ("The ALJ did not . . . specifically

identify the testimony he found not credible. . . . This was error and falls short of meeting the

ALJ's responsibility to provide a discussion of the evidence and the reason or reasons upon

which his adverse determination is based.").

After a claimant produces medical evidence of an underlying impairment, the

Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely

because it is unsupported by objective medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722

(9th Cir. 1998). Thus, the ALJ's conclusion that objective evidence in the record did not support

Plaintiff's allegations is not, standing alone, a valid reason to discredit Plaintiff's subjective

symptom testimony.

Other than a lack of objective medical evidence, the ALJ's reasons for disregarding

Plaintiff's allegations, and the specific testimony that the ALJ disregarded, were not identified

with sufficient specificity. The ALJ stated vaguely that treatment notes did not "sustain"

Plaintiff's allegations. Identifying evidence that undermines a claimant's complaints, and

contradicts a claimant's contention about how debilitating his or her condition is . . . is a clear

and convincing reason to reject a claimant's subjective testimony. *Valentine v. Comm'r*, 574

F.3d 685, 693 (9th Cir. 2009) ("[T]he ALJ's resolution between conflicting evidence provided a

clear and convincing reason to reject [the claimant's] subjective testimony."). Here, the ALJ did

not state that treatment notes were inconsistent with, or contradicted, Plaintiff's allegations, or

that Plaintiff's previous statements to doctors belied her statements at her hearing.[1] Furthermore,

the ALJ did not specifically identify the conflicts between the record and Plaintiff's testimony.

"[W]e may not take a general finding—an unspecified conflict between Claimant's testimony . . .

and her reports to doctors—and comb the administrative record to find specific conflicts."

*Brown-Hunter*, 806 F.3d at 494. Although the ALJ discussed portions of Plaintiff's records, the

ALJ did not specifically discuss what aspects of Plaintiff's testimony or allegations those records

were in conflict with. The ALJ stated only in a conclusory fashion that Plaintiff's "allegations of

disabling limitations" were not supported. "Because the ALJ failed to identify the testimony she

---

[1] In *Garrison v. Colvin*, 759 F.3d 995 (9th Cir. 2014), for instance, the Ninth Circuit reviewed the ALJ's decision to reject Garrison's mental health testimony "on the ground that the record showed that Garrison's condition had improved due to medication at a few points between April 2007 and June 2009." *Garrison*, 759 F.3d at 1016-17. In this case, the ALJ did not specifically state that she found Plaintiff's allegations to be non-credible because Plaintiff's condition had improved at various points. Rather, the ALJ stated her conclusion that Plaintiff's testimony was not fully credible, and then proceeded to summarize various medical evidence and records.

found not credible, she did not link that testimony to the particular parts of the record supporting her non-credibility determination. This was legal error." *Brown-Hunter*, 806 F.3d 487, 494 (9th Cir. 2015); *see also Burrell v. Colvin*, 775 F.3d 1133, 1138-39 (9th Cir. 2014) ("[T]he ALJ never connected the medical record to Claimant's testimony about her headaches . . . he never stated that he rested his adverse credibility determination on those findings. For that reason alone, we reject the government's argument that the history of treatment for headaches is a specific, clear, and convincing reason to support the credibility finding.").

### 2. Cherry Picking Evidence

Furthermore, even assuming that the ALJ relied on reports of improvement in Plaintiff's medical record as inconsistent with Plaintiff's allegations of disabling limitations, the Court concludes that the ALJ erred in failing to consider the record as a whole. Although, as discussed above, identifying evidence that undermines a claimant's subjective complaints may be a valid reason to discredit that claimant's testimony, in the context of mental health issues, such reasoning becomes more complicated. The Ninth Circuit has explained:

> [I]t is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment. Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working. Reports of "improvement" in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms. They must also be interpreted with an awareness that improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in a workplace. Caution in making such an inference is especially appropriate when no doctor or other medical expert has opined, on the basis of a full review of all relevant records, that a mental health patient is capable of working or is prepared to return to work.

*Garrison v. Colvin*, 759 F.3d 995, 1017-18 (9th Cir. 2014) (citations omitted). In *Garrison*, the

Ninth Circuit found that an ALJ erred because "[r]ather than describ[ing] [the claimant's]

symptoms, course of treatment, and bouts of remission, and thereby chart[ing] a course of

improvement, the ALJ improperly singled out a few episodes of temporary well-being from a

sustained period of impairment." *Id*. at 1018. Plaintiff argues that in this case the ALJ improperly

singled out a few episodes of improvement in Plaintiff's medical records. The Court agrees.

The ALJ discussed various points in the record where Plaintiff was reported to be

improved, and appeared to paint a timeline of improvement through 2015. The ALJ failed

adequately to take into consideration, however, other contemporaneous evidence in the record

demonstrating sustained problems. For instance, the ALJ noted that during an examination in

November 2011, Plaintiff's anxiety and depression were well-controlled. AR 26; *see* AR 310. On

that same day, however, Plaintiff indicated that over the prior two weeks she felt little interest or

pleasure in doing things and felt down, depressed, or hopeless. AR 309. During an exam on

October 29, 2012, the ALJ noted, Plaintiff's mood and affect, judgment and insight, and thought

process were normal. AR 289. Several days later, however, Plaintiff reported feeling anxious and

depressed, and having a difficult time with concentration. AR 290. The ALJ did acknowledge

that Plaintiff still felt depressed in May 2013, despite medication. AR 294. But, the ALJ

emphasized that a July 31, 2013 examination found linear and concrete thought process, no

loosening of association, and intact attention and concentration (although Plaintiff's recent

memory was somewhat impaired). AR 565. The ALJ noted that Plaintiff reported that group

therapy sessions had been helpful. AR 571. At other points in June and July, however, Plaintiff

had reported high levels of anxiety and depression that seemed to be getting worse. AR 450, 445,

546, 547. After a psychiatric evaluation on July 26, 2013, Dr. McCarty wrote that Plaintiff's

"psychiatric symptoms are severe and debilitating," and recommended that Plaintiff enroll in an intensive outpatient program for treatment. AR 558.

The ALJ also cited an August 2013 examination in which Plaintiff was anxious but engaged in the interview, oriented to person, place, and time, and had intact language, knowledge, memory, attention, and concentration, as well as linear and goal-directed thought, and fair to good insight and judgment. AR 592. That same month, however, Plaintiff reported low mood and high anxiety and depression. AR 573. In late August, Plaintiff reported that she was experiencing a "9 month period of worsening anxiety and depression, as well as problems with short-term memory and concentration." AR 590.

The ALJ next pointed to an October 2013 report that Plaintiff had increased mood and decreased anxiety, and that medication was helpful. AR 27. During that visit, although Plaintiff reported "a mild improvement in her mood and decrease in anxiety," she stated that she "still feels quite depressed overall with moderate anxiety." AR 606. In November 2013, Plaintiff reported that she was "[s]till having a very difficult time with concentration." AR 608. In December, 2013, Plaintiff reported no significant improvement in mood with a change in her medication regimen, and Dr. Jill Christine Gladish wrote that Plaintiff was applying for SSD "and given her ongoing depression and anxiety, this seems appropriate." AR 609.

The ALJ noted that on January 30, 2014 and in March 2014, Plaintiff was improved. AR 27 (citing AR 99-105). Plaintiff did report in January, however, that "her anxiety still flares and [her] mood remains depressed at times and is still below baseline level," and that her "[e]nergy and concentration remain impaired." AR 621. In March 2014, when, as the ALJ noted, Plaintiff was observed to be "noticeably brighter and more talkative," Plaintiff reported that while that day was a good day, she had been "up and down," and had periods of hopelessness

since her last visit. AR 625. In May, Plaintiff reported that her mood was okay, but that she had

"some really bad days," and had a flare in anxiety the prior week which was "worse in social

settings." AR 629. In June 2014, as the ALJ stated, Plaintiff appeared to be improved. AR 641.

Throughout June, however, Plaintiff reported high levels of anxiety and depression. AR 385-88.

On July 16, 2015, Plaintiff felt "pretty depressed," and was having trouble focusing and

concentrating. AR 643. At that visit, Dr. Herder wrote that Plaintiff brought "forms for student

loans because she is unable to work due to her depression and fibromyalgia." AR 643.

Dr. Herder noted that "[t]his is something that has been going on for several years and is likely to

go on for several more years." AR 643. On August 4, 2014, Plaintiff returned for follow-up and

reported a deterioration in her mood and increase in her anxiety. AR 646. Plaintiff reported that

her anxiety had been "out of control" lately, and that she had a breakdown a week before because

of anxiety. AR 646. Plaintiff also reported having vague thoughts of suicide, but denied "any

intent with regards to suicidal ideation." AR 646.

   The ALJ noted that Plaintiff worked with a Licensed Clinical Social Worker, Carey

Cogswell, throughout 2015, and that these sessions appeared to be helpful. The ALJ stated that

during a mental status examination in August 2015, Plaintiff was depressed but had linear and

goal-directed thought content, with no delusion or suicidal ideation. AR 948-49. Plaintiff's

memory, attention, and concentration were intact. AR 949. In January 2015, Plaintiff reported

that she was doing well and that her mood was improved and stable, and her anxiety was well

controlled. She reported some infrequent episodes of high anxiety, which were well controlled

by medication when needed. AR 849. In February, however, Plaintiff reported being more

depressed and anxious over the previous three weeks, following certain stressors. AR 858. The

ALJ acknowledged that in March 2015, Plaintiff reported worsening anxiety. AR 649. Plaintiff's

provider concluded that Plaintiff's depression was "serious." AR 652. Plaintiff was referred for

outpatient therapy by Dr. Gladish, who reported severe or marked difficulties in several areas of

functioning. AR 654. On April 5, 2015, Plaintiff's mood was "still improved," and her anxiety

was "fairly well controlled." AR 684. In May, Plaintiff reported that she was sleeping only two

or three hours per night due in party to anxiety and ruminations, but that her mood had been

"reasonably controlled." AR 867. Throughout August 2015, however, Plaintiff reported higher

levels of depression and anxiety, AR 878, 875, 874, and in August 2015, Dr. Gladish reiterated

her support of Plaintiff's application for disability benefits "as her depression and anxiety

currently prevent her from working regularly." AR 950.

The ALJ's conclusion that Plaintiff's allegations are less than credible because they are

not sustained by treatment notes in the record must be supported by "substantial evidence."

"Substantial evidence means more than a mere scintilla, but less than a preponderance; it is such

relevant evidence as a reasonable person might accept as adequate to support a conclusion."

*Garrison*, 759 F.3d at 1009 (quotation marks omitted). On the one hand, the ALJ is responsible

for resolving conflicting evidence. *See Valentine*, 574 F.3d at 693. On the other hand, "treatment

records must be viewed in light of the overall diagnostic record." *Trevizo v. Berryhill*, 871

F.3d 664, 680 (9th Cir. 2017) (quoting *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014)).

"The fact that a person suffering from depression makes some improvement does not mean that

the person's impairment no longer seriously affects his ability to function in a workplace."

*Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (alterations and quotation marks

omitted). "Occasional symptom-free periods—and even the sporadic ability to work—are not

inconsistent with disability." *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995), *as amended*

(Apr. 9, 1996); *see also Trevizo v. Berryhill*, 871 F.3d 664, 680 (9th Cir. 2017) ("[I]t is not

inconsistent with disability that Trevizo was not entirely incapacitated by fatigue at all times, and the treatment notes reflect that Trevizo reported weakness or fatigue at more than half of her appointments with Dr. Galhotra."). Here, the ALJ pointed to several places in the record where Plaintiff reported improvement in her symptoms. The ALJ apparently failed to consider, however, evidence demonstrating heightened symptoms at other times.

The ALJ's second stated reason for disregarding Plaintiff's subjective allegations was a lack of objective medical evidence. Although this "is a factor that the ALJ can consider in [her] credibility analysis," *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005), a lack of objective medical evidence affirmatively supporting a claimant's alleged symptom severity, standing alone, may not serve as a clear and convincing reason to discredit the claimant's credibility, *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Because the Court concludes that the ALJ failed to provide another specific, clear and convincing reason, supported by the record, for disregarding Plaintiff's subjective testimony was not supported by the record, the lack of objective medical evidence was not a proper reason, standing alone, to disregard Plaintiff's testimony.

### 3. Defendant's Arguments

Defendant argues that the record contradicts Plaintiff's allegations. Specifically, Defendant first argues that Plaintiff alleged uncontrolled anxiety despite treatment, repeated suicidal ideation, and multiple hospitalizations. But, Defendant points out, the record contains no evidence of inpatient treatment (hospitalization). Defendant also points out that Plaintiff frequently denied a desire or active intent to self-harm. There are several problems with these assertions. First, the ALJ did not rely on these as examples of contradiction of Plaintiff's allegations by the record. The Court is "constrained to review the reasons the ALJ asserts." *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Connett v. Barnhart*, 340

F.3d 871, 874 (9th Cir. 2003)). Second, Plaintiff stated, as did the ALJ in characterizing her testimony, that she had "been admitted three times into an intensive outpatient mental health hospitalization for the severe depression and anxiety." Although Defendant is correct that there is no record of *inpatient* hospitalization, the record supports Plaintiff's clear statement that she had been admitted for *outpatient* treatment, and her use of the term "hospitalization" to describe this is not misleading, nor did the ALJ suggest that it was. The ALJ appears to note that Plaintiff had never been hospitalized not for the purpose of suggesting that Plaintiff had mischaracterized her medical history, but rather to suggest that Plaintiff's condition was not as severe as she alleged *because it had never required* inpatient hospitalization. Similarly, the ALJ does not suggest that Plaintiff's lack of any history of suicide *attempts* contradicts her statement that she has "had suicidal ideations on more than one" occasion, nor does it in fact contradict that statement. AR 47. Defendant's assertion that Plaintiff has repeatedly denied a desire or active intent to self-harm does nothing to contradict Plaintiff's statement that she has, on more than one occasion, had suicidal ideation. Plaintiff's statement to that effect is supported by the record. AR 547, 554, 581, 587, 590, 615, 646, 656, 899, 937. Thus, these two reasons asserted by Defendant were neither relied on by the ALJ, nor were they actual contradictions.

Defendant also argues that Plaintiff's positive response to treatment undercut her allegations. The ALJ did note that Plaintiff's condition seemed to improve with treatment. AR 26. But, as discussed above, the ALJ did not specifically cite this as a reason to disregard Plaintiff's subjective allegations and, also as discussed, this constituted improper cherry-picking of evidence in the record.

**B. GAF Scores**

Plaintiff argues that the ALJ erred in assigning little weight to, and in one case ignoring all together, global assessment of functioning ("GAF") scores in the record. A GAF score "is a

rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." *Vargas v. Lambert*, 159 F.3d 1161, 1164 (9th Cir. 1998). Although it is relevant, a "GAF score does not determine disability." *Davis v. Astrue*, 2012 WL 4005553, at *9 (D. Or. June 12), *adopted by* 2012 WL 3614310 (D. Or. Aug. 21, 2012) (citations omitted); *see also Skelton v. Comm'r*, 2014 WL 4162536, at *11 (D. Or. Aug. 18, 2014) (explaining that the fifth and most recent edition of the Diagnostic and Statistical Manual of Mental Disorders abandoned the GAF scale). Instead, the dispositive inquiry is whether, based on the entire record, "the ALJ adequately accounted for [the claimant's] limitations in the RFC." *Davis*, 2012 WL 4005553, at *9; *see also Garrison*, 759 F.3d 995, 1003 (9th Cir. 2014) (noting that GAF scores "may be a useful measurement" but "standing alone, do not control determinations of whether a person's mental impairments rise to the level of a disability"); *Hughes v. Colvin*, 599 F. App'x 765, 766 (9th Cir. 2015) ("The ALJ did not err in failing to address Dr. Caverly's GAF score, because a GAF score is merely a rough estimate of an individual's psychological, social, or occupational functioning used to reflect an individual's need for treatment, but it does not have any direct correlative work-related or functional limitations."). Although the ALJ gave "some weight" to certain GAF scores in the record, she relied more on "evidence that demonstrates the claimant's overall ability to function." AR 29. The Court concludes that the ALJ did not err.

**C. Witness Evidence**

**1. Ms. Cogswell**

Plaintiff objects to the ALJ's failure to fully credit the opinion of Carey Cogswell, a Licensed Clinical Social Worker. Social Security Rule ("SSR") 06-03p defines "acceptable medical sources" as licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech pathologists. SSR 06-03p, *available*

*at* 2006 WL at 2329939 (Aug. 9, 2006). Health care providers who are not "acceptable medical sources," such as "nurse practitioners, physician's assistants, chiropractors, audiologists, and therapists," are still considered "medical sources" under the regulations, and the ALJ can use these other medical source opinions in determining the "severity of [the individual's] impairment(s) and how it affects [the individual's] ability to work." 20 C.F.R. § 404.1513(d). An "other" medical source may not, however, provide medical opinions or be given "controlling" weight as a treating medical source. *See* SSR 06-03p. Because Ms. Cogswell is a licensed clinical social worker, she is considered an "other" medical source.

An ALJ may not reject the competent testimony of "other" medical sources without comment. *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). To reject the competent testimony of "other" medical sources, the ALJ need only give "reasons germane to each witness for doing so." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (quoting *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010)). An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Molina*, 674 F.3d at 1115 (quoting *Nguyen*, 100 F.3d at 1467 (9th Cir. 1996)).

Ms. Cogswell worked with Plaintiff throughout 2015 on managing anxiety. AR 874-929. Ms. Cogswell completed an impairment questionnaire in which she opined that Plaintiff's mental health conditions prevent her from physical activities, that Plaintiff would miss more than four days of work per month, that Plaintiff had marked limitation in ability to remember work-like procedures and to understand, remember, and carry out short, simple, instructions, and that Plaintiff had extreme limitation in ability to maintain attention and regular attendance. Ms. Cogswell opined that Plaintiff would have marked limitation in sustaining an ordinary routine and working with others, and extreme limitation in making simple work-related

decisions, completing a workday without symptom interruption, and responding appropriately to changes in a work setting. In conclusion, Ms. Cogswell opined that Plaintiff would be unable to work either full-time or part-time. AR 937-43.

The ALJ gave little weight to Ms. Cogswell's opinion for several reasons. First, the ALJ found it to be inconsistent with the fairly routine mental health treatment Ms. Cogswell provided to Plaintiff. In generally, this is a valid reason to reject a provider's opinion. *See Rollins v. Massanari*, 261 F.3d. 853, 856 (9th Cir.2001) (ALJ properly rejected treating physician's opinion that a claimant was disabled where that physician prescribed a conservative course of treatment).[2] In this case, however, it is not a germane reason to reject Ms. Cogswell's opinion. Ms. Cogswell wrote that Plaintiff's treatment consisted of medication management, therapy, psychodynamic interventions, and a period of intensive outpatient mental health treatment. To the extent the treatment that Ms. Cogswell provided to Plaintiff was "routine," as the ALJ stated, it is not clear that Ms. Cogswell, a Licensed Clinical Social Worker (and not a physician) could have provided any more intensive treatment to Plaintiff.

---

[2] Plaintiff argues that conservative mental health treatment is not a proper basis to reject a claimant's credibility, citing *Orn v. Astrue*, 495 F.3d 625 (9th Cir. 2007). The Ninth Circuit held in *Orn* that "Orn's failure to receive medical treatment *during the period that he had no medical insurance* cannot support an adverse credibility finding." *Id*. at 638 (emphasis added). The court noted that "an 'unexplained, or inadequately explained, failure to seek treatment' may be the basis for an adverse credibility finding unless one of a 'number of good reasons for not doing so' applies." *Id*. (quoting *Fair*, 885 F.2d at 603). In fact, the Ninth Circuit has found that "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (quoting *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)). Furthermore, *Orn* does not support, and Plaintiff does not provide any authority to support, the assertion that conservative treatment is not a proper basis to reject a medical expert's opinion that a claimant is unable to work. Additionally, Defendant cites *Valentine v. Comm'r*, 574 F.3d 685, 692-93 (9th Cir. 2009) for the proposition that discrepancies between a source's opinion and the treatment that source provides is a sufficient reason to reject that opinion. *Valentine* does not support this proposition.

The ALJ also found Ms. Cogswell's report to be inconsistent with Plaintiff's high-functioning activities of daily living. The Court concludes that this is a germane reason to reject Ms. Cogswell's report as an "other" medical source provider.

The ALJ also found that Ms. Cogswell's opinion was internally contradictory, because although Ms. Cogswell opined that the mental abilities needed to perform unskilled work are all markedly impaired or extremely limited, Ms. Cogswell simultaneously concluded that Plaintiff would be able to manage benefits in her own interest. Internal inconsistencies are relevant to an ALJ's resolution of "conflicts in medical testimony, and resolving ambiguity." *Morgan v. Comm'r*, 169 F.3d 595, 603 (9th Cir. 1989). An internal discrepancy between a finding of functioning and other recorded observations "is a clear and convincing reason for not relying on the doctor's opinion on" that matter. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Some courts have held that it is inconsistent to opine that a claimant is markedly or extremely limited in functional abilities while also opining that he or she is capable of managing his or her own benefits in her best interest. *See Hasan v. Berryhill*, 2017 WL 4277597, at *5 (D. Md. Sept. 25, 2017) ("[I]t is contradictory to indicate that [Plaintiff] has marked or extreme limitations in almost every functional ability but she is still able to manage her own benefits.") (alteration in original); *Lee v. Astrue*, 2012 WL 4479288, at *5 (N.D. Ala. Sept. 26, 2012) ("Dr. Yedla's statement that Plaintiff could manage her own benefits could reasonably be seen as inconsistent with her diagnosis of Plaintiff as having 'marked' limitations."); *Kennerly v. Colvin*, 2015 WL 9672913, at *11 (S.D.W. Va. Dec. 8, 2015), *report and recommendation adopted*, 2016 WL 93867 (S.D.W. Va. Jan. 7, 2016) ("The ALJ further noted the inherent conflict between the severe functional limitations Mr. Atkinson assigned to Claimant, and his opinions that she had a fair prognosis and could manage her own benefits."); *French v.*

*Comm'r*, 2016 WL 3951419, at *10 (E.D. Mich. June 30, 2016), *report and recommendation adopted*, 2016 WL 3924111 (E.D. Mich. July 21, 2016) (upholding ALJ's finding that a physician's opinion was internally inconsistent because the physician "concludes that French suffered from extreme limitations, but nonetheless could manage her own benefits"). *But see Cannon v. Colvin*, 2016 WL 1449245, at *6 (E.D. Pa. Apr. 13, 2016) ("[T]he ability to manage one's own benefits may not always be inconsistent with disabling functional limitations."); *Rogers v. Colvin*, 970 F. Supp. 2d 1147, 1156 (W.D. Wash. 2013) ("[A]lthough the ALJ notes that Dr. Holder opined that plaintiff could manage her own benefits and had no limitations in her activities in daily living; and in the same report opined that she had frequent deficiencies in her concentration, persistence and pace and continual episodes of decompensation, these are not necessarily inconsistent opinions."). In this case, particularly because Ms. Cogswell did not opine that Plaintiff has issues with judgment or impulse control, the Court concludes that Ms. Cogswell's opinion on Plaintiff's limitations is not internally contradictory. As such, this was not a valid reason to reject Ms. Cogswell's opinion.

Finally, the ALJ noted that Ms. Cogswell only began seeing Plaintiff in July 2014, but opined on Plaintiff's condition beginning in 2006, with no explanation of the basis of her opinion on the pre-2014 time frame. An opinion that "is brief, conclusory, and inadequately supported by clinical findings" need not be accepted. *Bray v. Comm'r*, 554 F.3d 1219, 1228 (9th Cir. 2009). Because Ms. Cogswell's report did not explain the basis of her opinion that Plaintiff was unable to work full-time as of 2006, this is a germane reason to disregard Ms. Cogswell's opinion.

### 2. Dr. Herder

Plaintiff also objects to the ALJ's decision to give little weight to the opinion of Kimberly Herder, M.D., a treating physician. Dr. Herder opined that Plaintiff has a medically determinable impairment that prevents her from performing substantial gainful activity.

Dr. Herder stated that Plaintiff is limited in her ability to lift, needs help cooking and cleaning, and has poor concentration and coping skills. AR 482. Dr. Herder opined that Plaintiff would experience substantial difficulty with stamina, pain, or fatigue if working full time, and would need to work at a reduced pace. AR 930. Dr. Herder opined that Plaintiff's symptoms interfere with concentration very frequently, and that Plaintiff would be incapable of even low-stress work. AR 931. Dr. Herder opined that Plaintiff would be unable to focus and problem solve, and would have impaired judgment. AR 931. Dr. Herder opined that Plaintiff would be absent from work four or more days per month. AR 934.

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle*, 533 F.3d at 1164. The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Generally, "a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). If a treating physician's opinion is supported by medically acceptable techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2). A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). If a treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific and legitimate reasons" for discrediting the treating doctor's opinion. *Id.* "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her]

interpretation thereof, and making findings." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Because Dr. Herder's opinion is contradicted, the ALJ was required to provide specific and legitimate reasons to disregard Dr. Herder's opinion.

The ALJ afforded little weight to Dr. Herder's opinion. As an initial matter, the ALJ noted that the determination of whether a claimant is disabled, which Dr. Herder opined on directly, is reserved to the Commissioner. The ALJ also concluded that Dr. Herder's opinion was not consistent with the record as a whole, not supported with relevant evidence, and that the limitations Dr. Herder assessed were excessive in light of the record. The ALJ also noted that the specific impact on Plaintiff's ability to work was not defined, and that Dr. Herder did not explain how she arrived at the limitations she did.

An "ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r*, 554 F.3d 1219, 1228 (9th Cir. 2009). Although Dr. Herder's report did not include any clinical test findings, the ALJ's assertion that Dr. Herder's report was not supported with relevant evidence is unreasonable in light of the fact that Dr. Herder was Plaintiff's treating physician, and Dr. Herder's treatment records were in the record before the ALJ. *See* AR 287-383.

Additionally, a physician's report should demonstrate precisely how a claimant's "symptoms translate into specific functional deficits which preclude work activity." *Morgan v. Comm'r*, 169 F.3d 595, 601 (9th Cir. 1999) ("Although Dr. Grosscup identified characteristics that might limit Morgan's ability to work on a sustained basis . . . Dr. Grosscup did not explain *how* these characteristics precluded work activity in Morgan's case.") (emphasis in original). The ALJ stated that "the specific impact on the claimant's ability to work is not defined, and

Dr. Herder does not explain how she arrived at the limitations she did." AR 28. To the contrary, after opining that Plaintiff would be "[i]ncapable of even 'low stress' jobs," Dr. Herder explained her reasons for this conclusion, citing Plaintiff's inability to focus and problem solve, and having impaired judgment. AR 931. Later, Dr. Herder discussed work-related activities affected by Plaintiff's impairments: "difficulty with focus, concentration + problem solving"; "back + leg pain due to fibromyalgia limiting stamina, standing, walking, carrying." AR 934. Thus, the ALJ erred in relying on this as a reason to disregard Dr. Herder's opinion.

The ALJ also concluded that the limitations identified in Dr. Herder's report were "grossly overstated in a manner that is not consistent with the record, which shows fairly high functioning activities of daily living, and relatively conservative medical treatment." AR 28. Inconsistency with a claimant's daily activities is a proper basis on which to reject a medical opinion. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). However, "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Furthermore, a plaintiff need not be "utterly incapacitated to be eligible for benefits" and not all activities of daily living are transferable to the workplace "where it might be impossible to periodically rest or take medication." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). The ALJ noted that Plaintiff goes shopping for groceries and prescriptions, takes care of two dogs and a cat during the day, does laundry, washes dishes, and cooks dinner. One day per week, Plaintiff takes her granddaughter to daycare, and on three days per week she drives to pick up her son from school. Plaintiff testified, however, that she is able to do dishes only by taking several breaks, that her husband sometimes helps her fold the laundry, and that she "sometimes" goes shopping, but that her husband accompanies her. AR 53-55. She also testified that she feeds the family's pets, but that her

husband takes the dogs outside. AR 56. Plaintiff takes breaks while doing chores throughout the day. AR 55. The ALJ failed to identify specifically what aspects of Dr. Herder's report are inconsistent with Plaintiff's activities of daily living. In light of this, the Court concludes substantial evidence does not support finding that the limitations in Dr. Herder's report are "grossly overstated" in light of, or inconsistent with, Plaintiff's activities of daily living.

To the extent the ALJ relied on "conservative medical treatment," the ALJ erred. Over the course of several years, Plaintiff has frequently been engaged in counseling or therapy, has taken various medications for her anxiety and depression at varying levels, and has undergone three intensive outpatient hospitalizations for mental health treatment. The Court finds that Plaintiff's medical record is not one of "conservative" treatment. Although the ALJ did not specify what treatment she would expect to see in a patient being treated non-conservatively, the only thing that would appear to be less conservative would be an inpatient hospitalization. The Court refuses to find that the mere fact that a claimant has not been admitted to a hospital on an inpatient basis means that the claimant has received only "conservative treatment." *See Duarte v. Berryhill*, 2018 WL 785819, at *9 (S.D. Cal. Feb. 8, 2018), *report and recommendation adopted*, 2018 WL 1108783 (S.D. Cal. Mar. 1, 2018) (discussing cases addressing this issue); *Kuharski v. Colvin*, 2013 WL 3766576, at *5 (E.D. Cal. July 16, 2013), *amended*, 2014 WL 3385183 (E.D. Cal. July 10, 2014) ("The fact that plaintiff had not been hospitalized for a psychiatric crisis does not mean that his treatment was 'conservative' or that he could function in a normal working environment."); *Odisian v. Colvin*, 2013 WL 5272996, at *8 (C.D. Cal. Sept. 18, 2013) (noting that "the fact that plaintiff had not been hospitalized suggests conservative treatment, but that fact alone is insufficient," and also stating that while "[t]he strength of plaintiff's medication, if low dosage, may indicate conservative treatment," the

record was insufficient to support the ALJ's finding in that respect); *Matthews v. Astrue*, 2012 WL 1144423, at *9 (C.D. Cal. Apr. 4, 2012) ("Plaintiff has been taking psychotropic medication and receiving outpatient care since 2005. Claimant does not have to undergo inpatient hospitalization to be disabled."); *see also Regennitter v. Comm'r*, 166 F.3d 1294, 1299-300 (9th Cir. 1999) ("[W]e have particularly criticized the use of a lack of treatment to reject mental complaints both because mental illness is notoriously underreported and because it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.") (quotation marks omitted).

Additionally, because the Court concludes that the ALJ did not properly disregard Plaintiff's own subjective complaints, the ALJ erred in giving little weight to Dr. Herder's opinion on this ground. "A physician's opinion of disability 'premised to a large extent upon the claimant's own accounts of his symptoms and limitations' may be disregarded where those complaints have been 'properly discounted.'" *Morgan v. Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999) (quoting *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989)). This issue is complicated, however, in the context of psychiatric evaluations, which "may appear subjective," but "will always depend on part on the patient's self-report, as well as on the clinician's observations of the patient." *Buck v. Berryhill*, 869 F.3d 1040 (9th Cir. 2017). "Thus, the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness." *Id*. In *Buck*, the Ninth Circuit concluded that because a psychiatric evaluation involved "a clinical interview and a mental status evaluation" in addition to a review of the claimant's self-reports, the doctor's "partial reliance on [the claimant's] self-reported symptoms [was] . . . not a reason to reject his opinion." *Id*. In this case, as the ALJ noted, in response to the question "[w]hat medical findings support the limitations described above," Dr. Herder wrote:

"none. subjective." Thus, the fact that Dr. Herder's report was premised to a large extent on Plaintiff's own statements would have been a specific and legitimate reason to give less weight to Dr. Herder's statement, if Plaintiff's subjective complaints had been properly discounted. Because, as discussed above, the Court concludes that the ALJ did not properly discount Plaintiff's subjective complaints, this was not a specific and legitimate reason, supported by the record, to disregard Dr. Herder's opinion.

The ALJ also concluded generally that Dr. Herder's opinion was not consistent with the record as a whole. Consistency with the record as a whole is a valid consideration in weighing medical opinions. 20 C.F.R. § 404.1527(c)(4). "An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Garrison*, 759 F.3d at 1012 (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). Because, as the Court has concluded, the ALJ failed to adequately assess the record as a whole, and in light of the fact that the Court has rejected the ALJ's other proffered reasons for rejecting Dr. Herder's report, the Court concludes that this unexplained, conclusory finding is insufficient to meet the substantial evidence requirement. As such, the Court concludes that the ALJ failed to provide specific and legitimate reasons, supported by substantial evidence in the record, to reject Dr. Herder's opinion.

### 3. Mr. Herzman

Plaintiff also objects to the ALJ's failure to credit a report and letter submitted by Terry Herzman, Plaintiff's husband. *See* AR 219-220. "In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). An ALJ errs by failing to "explain her reasons for

disregarding . . . lay witness testimony." *Id.* at 1115 (quoting *Nguyen*, 100 F.3d at 1467 (9th Cir. 1996)).

The ALJ explained that Mr. Herzman's letter generally supported Plaintiff's statements about her disability. The ALJ concluded that Mr. Herzman's statements did not establish that Plaintiff is disabled. First, the ALJ stated: "By virtue of the relationship with the claimant, Mr. Herzman cannot be considered a disinterested third party witness whose statements would not tend to be colored by affection for the claimant and a natural tendency to agree with the symptoms and limitations the claimant alleges." AR 29. "The fact that a lay witness is a family member cannot be a ground for rejecting his or her testimony. To the contrary, testimony from lay witnesses who see the claimant everyday is of particular value; such lay witnesses will often be family members." *Regennitter v. Comm'r*, 166 F.3d 1294, 1298 (9th Cir. 1999) (quotation marks and alterations omitted). Thus, a general allegation of bias, based on Mr. Herzman's relationship with Plaintiff, is not a proper basis on which to disregard Mr. Herzman's opinion.

Second, the ALJ explained that Mr. Herzman's report was "simply not consistent with the preponderance of the opinions and observations by medical doctors in this case." AR 30. This is a germane reason to reject Mr. Herzman's opinion. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) ("An ALJ need only give germane reasons for discrediting the testimony of lay witnesses. Inconsistency with medical evidence is one such reason.") (citation omitted). Thus, the ALJ did not err in rejecting Mr. Herzman's opinion.

**D.  Listing 12.04, Plaintiff's RFC, and Proper Remedy**

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001) (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for

immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Id.* at 1100. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison v. Colvin*, 759 F.3d 995, 999 (9th Cir. 2014). The United States Court of Appeals for the Ninth Circuit articulates the rule as follows:

> The district court must first determine that the ALJ made a legal error, such as failing to provide legally sufficient reasons for rejecting evidence. If the court finds such an error, it must next review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities, and all essential factual matters have been resolved. In conducting this review, the district court must consider whether there are inconsistencies between the claimant's testimony and the medical evidence in the record, or whether the government has pointed to evidence in the record that the ALJ overlooked and explained how that evidence casts into serious doubt the claimant's claim to be disabled. Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits.
>
> If the district court does determine that the record has been fully developed and there are no outstanding issues left to be resolved, the district court must next consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. Said otherwise, the district court must consider the testimony or opinion that the ALJ improperly rejected, in the context of the otherwise undisputed record, and determine whether the ALJ would necessarily have to conclude that the claimant were disabled if that testimony or

opinion were deemed true. If so, the district court may exercise its discretion to remand the case for an award of benefits. A district court is generally not required to exercise such discretion, however. District courts retain flexibility in determining the appropriate remedy and a reviewing court is not required to credit claimants' allegations regarding the extent of their impairments as true merely because the ALJ made a legal error in discrediting their testimony.

*Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015) (internal citations and quotation marks omitted).

Because the ALJ failed to provide specific, clear and convincing reasons not to credit Plaintiff's testimony and Dr. Herder's medical opinion, the Court concludes that it should "reverse and remand for proper consideration of the evidence or adequate justification for [the ALJ's] exclusion of these pieces of evidence." *Mattox v. Comm'r*, 371 F. App'x 740, 742 (9th Cir. 2010). On remand, the ALJ should reconsider the evidence and thereafter reconsider whether Plaintiff met the requirements of Listing 12.04. *See id*. If the ALJ concludes that Plaintiff does not meet the requirements of Listing 12.04, the ALJ should further re-evaluate Plaintiff's RFC.

## CONCLUSION

The decision of the Commissioner is REVERSED and REMANDED for further proceedings consistent with this opinion.

**IT IS SO ORDERED**.

DATED this 20th day of June, 2018.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge